**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:04cr421** |
| | ) | |
| **BEMBA BALSIROV, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>ORDER</u>**

The matter came before the Court on the government's motion to disqualify defense counsel Joseph J. Aronica and the law firm of Duane Morris LLP from representing both defendants Naran S. Ivanchukov and, his daughter, Michelle I. Pappadakis, or either of them.  The matter has been fully briefed and argued and is now ripe for disposition.

I.

In this immigration document fraud and money laundering prosecution, the government has indicted seven co-conspirators, all of whom were either employees of, or affiliated with, Global Recruitment and Immigration Services, Inc. ("Global").  A substantial part of Global's business involved assisting aliens seeking permanent residence in the United States to obtain "green cards" through an employment-based visa program.  In essence, the alleged scheme involved charging aliens significant sums of money in return for which Global and the co-conspirators would submit fraudulent applications for labor certification to the Department of Labor ("DOL"), falsely representing under penalty of perjury that various employers had vacant positions they had tried and failed to fill from the available U.S. workforce.  In fact, however, these companies had no need for additional workers, nor did they have any intention of hiring the aliens named on the applications. Relying on these false applications, the DOL certified that there were insufficient U.S. workers willing and qualified to perform the labor in question and that the employment of the alien would

not adversely affect the wages and working conditions of U.S. workers similarly employed, an essential step in the process for an alien to obtain an employment-based visa and, ultimately, permanent residence status.

Ivanchukov, who was the owner and president of Global, and Pappadakis, who was its vice-president, are accused of playing central leadership roles in the immigration fraud conspiracy and are the only defendants named in the money laundering counts.  Both Pappadakis and Ivanchukov are jointly represented by Mr. Aronica and his firm and both defendants represent that they wish to continue to the joint representation by Mr. Aronica and his firm.

On May 4, 2005, the government filed its motion to disqualify Mr. Aronica and his law firm from jointly representing both defendants, or either of them separately.  The government contends that joint representation presents the serious potential for an untenable conflict of interest because the evidence strongly suggests conflicting factual defenses that might permit each defendant to seek to shift blame to the other.  Further, the government argues that Mr. Aronica faces an irreconcilable conflict with respect to plea bargain negotiations, since either client might obtain an advantage by offering to testify against the other.  In response, defendants argue that the government has identified no actual or serious potential conflict, but instead has merely alleged "hypothetical factual scenarios" that might arise during trial that have not, as yet, arisen.  Further, they argue that the government has waived its right to object to these potential conflicts by failing to move for disqualification earlier in the prosecution.

A hearing was held on the government's motion on May 13, 2005, at which time oral argument was heard and each defendant was advised of his or her Sixth Amendment right to conflict-free effective assistance counsel, including separate representation, as required by Rule 44, Fed. R. Crim. P.  Further, *voir dire* was conducted with each defendant to determine whether he or

she knowingly and voluntarily waived the right to have separate counsel.  Given the filial as well as

the business relationship between these two defendants, and thus the concern that one might be

influenced by the presence of the other, each defendant was questioned individually at the bench out

of the other's hearing.  In the course of the questioning, each defendant was advised of the conflicts

that might arise during joint representation, both during pre-trial and at trial, including conflicts

related to differing incentives for counsel (i) to pursue plea bargains, (ii) to cross-examine witnesses

and evidence, and (iii) to seek the admission or exclusion of evidence.  Both defendants represented

that they understood the potential for conflicts of interest that the lawyer may have, but that they

nonetheless wished to waive their right to conflict-free counsel.  No objection was raised by either

counsel that this *voir dire* procedure did not comport fully with the requirements of Rule 44.

Following this procedure, the Court found that each of the defendants was fully competent and

capable of waiving the right to conflict-free counsel and that both defendants knowingly and

voluntarily waived this right, but advised the parties that the matter would be taken under

advisement for the purpose of considering whether disqualification was appropriate notwithstanding

defendants' waivers and that a decision would issue today.

## II.

The legal principles governing disqualification of counsel for an actual or potential conflict

arising from joint representation of co-defendants are well-settled.  While an attorney's joint

representation of co-defendants is not a *per se* violation of a defendant's Sixth Amendment right to

effective assistance of counsel, the potential for a conflict of interest in these circumstances is so

grave that "[u]nless there is good cause to believe that no conflict of interest is likely to arise," a

district court must take appropriate measures to protect each defendant's right to counsel.  *See* Rule

44, Fed. R. Crim. P. & advisory committee notes; *Holloway v. Arkansas*, 435 U.S. 475, 482, 486 n.8

-3-

(1978) (quoting the American Bar Association's Standards Relating to the Administration of
Criminal Justice).[1]  Thus, the Supreme Court held in *United States v. Wheat*, 486 U.S. 153 (1988),
that when presented with possible conflicts of interest, a district court must consider whether
separate counsel should be appointed to represent each party.  *See id.* at 159-60 ("[A] court
confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain
whether the conflicts warrant separate counsel.").  While it is true that there is a Sixth Amendment
presumption in favor of a defendant's counsel of choice, the right is not absolute; it is circumscribed
by a trial court's institutional obligation to safeguard the integrity of the proceedings before it and to
protect the defendant's competing Sixth Amendment right to conflict-free counsel.  *See United
States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997); *Wheat*, 486 U.S. at 160.  Indeed, even a
specific waiver by the defendant of any conflict of interest that might arise will not necessarily cure
the problem; the district court still has an independent duty to ensure that criminal trials "are
conducted within the ethical standards of the profession and that legal proceedings appear fair to all
who observe them."  *See Wheat*, 486 U.S. at 161-62 (remarking that where district court finds actual
or potential conflict of interest "there can be no doubt that it may decline a proffer of waiver, and
insist that defendants be separately represented.").[2]  Thus, even in the face of a knowing and

--------

[1] *See also United States v. Tatum*, 943 F.2d 370, 376 (4th Cir. 1991) ("When an attorney
is actively engaged in legal representation which requires him to account to two masters, an
actual conflict exists when it can be shown that he took action on behalf of one.  The effect of his
action of necessity will adversely affect the appropriate defense of the other."); *Hoffman v. Leeke*,
903 F.2d 280, 285 (4th Cir. 1990) ("Permitting a single attorney to engage in the joint
representation of codefendants is not a *per se* violation of the Sixth Amendment right to effective
assistance of counsel.  However, it is well settled that the Sixth Amendment right to assistance of
counsel is breached where one lawyer is required to represent two defendants despite the
defendants' conflicting interests.") (citations omitted).

[2] This is particularly true in light of the fact that a defendant who waives his right to be
represented by conflict-free counsel, may later argue successfully on appeal or in a 28 U.S.C. §

voluntary waiver, disqualification and appointment of separate counsel may be appropriate.

The Supreme Court in *Wheat* articulated the principles that govern a district court's determination whether to reject a waiver and disqualify counsel from representing multiple co-defendants.  In this respect, *Wheat* teaches that separate counsel should be appointed not only when an *actual* conflict exists, but also "in the more common cases" where a *potential* for conflict exists "which may or may not burgeon into an actual conflict as the trial progresses."  *Id.* at 163.  As the Supreme Court recognized, "a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly."  *Id.* at 162.  At this pretrial stage, "nascent conflicts of interest are notoriously hard to predict" and even defense counsel cannot know with certainty what conflicts might arise during trial.  *See id.* at 162-63 ("It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand.  A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants.").  Thus, given this uncertainty pretrial, "[i]n determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over members of the bar and with a view to preventing 'the appearance of impropriety,' it is to resolve all doubts in favor of disqualification."  *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (citation omitted).

III.

_____

2255 petition, that his conviction should be overturned because, as a result of a conflict that arose during trial, he was denied the effective assistance of counsel.  *See Wheat*, 486 U.S. at 161.

-5-

These principles, applied here, point persuasively to the conclusion that disqualification from joint representation is necessary and that Ivanchukov and Pappadakis should be separately represented in subsequent proceedings in this case.  The serious potential that a conflict of interest will arise is simply too great to permit continued joint representation of these defendants by Mr. Aronica and his firm.

To begin, it is clear that Ivanchukov's and Pappadakis's relative positions within Global, as president and vice-president, present the potential for conflicting factual defenses as each defendant, if represented by a zealous advocate acting in his or her client's best interests, could seek to shift blame for the immigration fraud conspiracy to the other.  *See, e.g.*, *Howard*, 115 F.3d at 1155 (upholding disqualification and noting that lower court was "troubled" by joint representation where one defendant supervised the other in a drug conspiracy).  For example, Pappadakis might argue that she played only a minor role in the conspiracy or indeed acted unwittingly at the direction of Ivanchukov who, as president and owner of the company, gave direction to Global employees acting under Pappadakis's supervision without her knowledge or consent.  Ivanchukov, on the other hand, might argue that Pappadakis was entirely responsible for the day-to-day operation of Global and that she orchestrated the conspiracy and directed others to take action in furtherance of it without his knowledge or approval.  The mere fact that defendants do not at this time expect to pursue conflicting factual defenses does not conclusively establish that no conflict exists or will arise, for indeed a lawyer representing both defendants' interests has no incentive to consider and pursue these differing and conflicting defenses or even to raise them with his clients.[3]

_____

[3] It is important to emphasize that Mr. Aronica has been appropriately sensitive to this problem from the outset and, in fact, acted promptly to obtain independent counsel for other Global employees who sought to retain him in view of the potential conflicts of interest that might arise.  Indeed, he has also been appropriately sensitive to the potential conflict in

Given the potential for conflicting defenses based on defendants' roles in the conspiracy, it is not difficult to imagine scenarios that might arise at trial in which counsel representing both defendants might have conflicting incentives on whether and how to cross-examine certain witnesses or whether to object to the admission of certain evidence. Conflict-free counsel, by contrast, would not have such conflicting incentives. For example, the government represented during the hearing that a witness would testify at trial that she overheard Ivanchukov direct a Global employee to take certain actions in furtherance of the conspiracy. Counsel representing only Ivanchukov's interests would have a strong incentive to attack the witness's credibility while Pappadakis's counsel, knowing that she could use this testimony to bolster an argument that Ivanchukov was the leader and primary actor in the conspiracy, might well elect to leave the witness's testimony intact. Further, it is impossible to predict at this stage how "a few bits of unforeseen testimony" or a single previously "unknown or unnoticed document" might significantly change the relationship between the defendants and thereby raise a specific, previously unforeseen conflict. *See Wheat*, 486 U.S. at 163 (recognizing that "[a] few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants"). Thus, continued joint representation would require constant vigilance during trial to identify conflicts that might arise at any point. Failure to anticipate these conflicts might ultimately result in a mistrial or an overturned conviction. And even if anticipated, a conflict arising in the midst of trial may be impossible to remedy merely by appointing separate counsel.

More apparent is the serious potential for a conflict to arise pre-trial in the course of plea

---

representing both Ivanchukov and Pappadakis, and has persisted in the joint representation of both because of the filial relationship between the two defendants and given their strong, expressed desire that Mr. Aronica continue the joint representation.

bargaining.  Conflict-free counsel acting for either defendant, but particularly Pappadakis, would have a strong incentive on behalf of his client to seek a plea bargain that would minimize potential jail time in return for cooperation against other defendants.  Yet, such a plea bargain, by requiring the pleading defendant to maximize his or her cooperation with the government, would likely require that defendant to implicate Mr. Aronica's other client.  Indeed, courts have recognized that joint representation of conflicting interests is suspect for Sixth Amendment purposes precisely because it might prevent an attorney from exploring fully the opportunity for plea negotiations.[4]  In this case, defendants argue that no potential conflict exists because, as Mr. Aronica represents, he has previously inquired of the government regarding a possible plea bargain for Pappadakis, but was rebuffed.  While this is no doubt true, it is, in the context of the course of criminal trials, ancient history; the government might well change its mind at any moment.  And moreover, conflict-free counsel, acting on behalf of Pappadakis, might be instrumental in persuading the government to change its mind.[5]

Finally, even if no conflict arises before trial or during trial, if defendants are convicted, it is likely that conflicts may arise at sentencing.  For example, separate counsel acting on behalf of each defendant would surely argue at sentencing that his or her client was only a minimal or minor

---

[4]  *See, e.g.*, *Holloway*, 435 U.S. at 489-90 (recognizing that joint representation might have prevented attorney from "exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable"); *Tatum*, 943 F.2d at 376 ("Exploring possible plea negotiations is an important part of providing adequate representation of a criminal client, and this part is easily precluded by a conflict of interest.") (quoting *Mannhalt v. Reed*, 847 F.2d 576, 582 (9th Cir. 1988)).

[5]  Indeed, defense counsel recently represented that plea negotiations are ongoing and defendants have moved that Pappadakis be assigned separate counsel solely for the purpose of pursuing these discussions.  Of course, while this might alleviate the conflict of interest that would operate during the course of the plea negotiations, it does not address the other potential conflicts that might arise.

-8-

participant in the conspiracy and, therefore, is entitled to a reduction in sentence for a mitigating role, and that any sentencing enhancement for a leadership or supervisory role in the conspiracy should be applied to other defendants, but not to his or her client.[6]  Counsel representing both of these defendants jointly, by contrast, would face the problem that the role adjustments under the U.S. Sentencing Guidelines depend in part on a comparison among co-conspirators.[7]

By the same token, similar conflicts may arise with respect to forfeiture.  Conflict-free counsel would have an incentive to minimize the amount of proceeds reasonably foreseeable to his or her client as proceeds derived from the conspiracy while maximizing the amount foreseeable to the other defendants.  *See United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996) (holding that criminal forfeiture liability is not limited to property a defendant derived individually but includes all property the defendant derived from those acting in concert with him).  Counsel jointly representing both defendants, on the other hand, would at least feel restrained when making such an argument by his duty of loyalty to the other defendant.

While defendants are arguably correct in describing these conflicts as potential in nature, as conflicts have not, as yet, arisen, it is difficult to be confident that they will not arise and indeed that other conflicts not now apparent will not also arise until it is too late to remedy the problem by appointing separate counsel.  It is impossible at this stage to predict with precision the exact testimony of each witness, each piece of evidence that will be introduced, or the future progress of plea negotiations.  Nor is it appropriate to undertake a thorough witness by witness, document by document review of the government's case to identify with particularity the conflicts that might

---

[6] *See* United States Sentencing Guidelines Manual §§ 3B1.1 & 3B1.2 (2004).

[7] *See* United States Sentencing Guidelines Manual § 3B1.2, Application Note 3(A) (2004).

arise.  Even so, while the conflicts that have been identified are only potential in nature, it is

nonetheless clear that there is a high probability these conflicts will arise.[8]  It is not appropriate,

therefore, as the Fourth Circuit teaches, to weigh the circumstances "with hair-splitting nicety," but

instead it is appropriate "to resolve all doubts in favor of disqualification."  *Clarkson*, 567 F.2d at

273 n.3.[9]

Finally, the government argues that merely disqualifying Mr. Aronica and his firm from

representing both defendants is not enough.  Instead, it seeks disqualification from representation of

*either* defendant.  Specifically, the government argues that continued representation of either

defendant would present the possibility that Mr. Aronica and his law firm might use confidential

communications from the former client in furtherance of the interests of the other remaining client.

To be sure, it is within a court's broad discretion to require new counsel to be appointed for both

defendants.  *See, e.g.*, *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996) (upholding

discretion of district court to disqualify attorney who once represented both husband and wife from

continuing to represent husband when his wife was a potential witness for the government).  But

this a discretionary matter; it is not mandatory.  *See id.* (recognizing district court's discretion to

---

[8] Indeed, it is worth noting that Mr. Aronica, recognizing the potential for conflicts among various employees of Global, has already sought out and obtained separate counsel for other Global employees.  Although it is understandable that Ivanchukov and Pappadakis should wish to continue being jointly represented by Mr. Aronica, the familial relationship between the two does not mitigate the importance of preventing representation by counsel operating under a potential conflict.

[9] Defendants also argue that the government waived its right to object to the joint representation by failing to raise it earlier.  Yet, by requesting disqualification of Mr. Aronica and his firm, the government is not invoking any right it possesses; the rights and interests involved are the Sixth Amendment right to conflict-free counsel possessed by defendants and the Court's obligation to protect the integrity of the proceedings.  It is the Court that has the obligation to ensure that these rights and interests are correctly balanced and given effect, and the Court's obligation to do so is ongoing and does not dissipate with time.

fashion a remedy other than disqualification, but upholding exercise of discretion to disqualify); *Wheat*, 486 U.S. at 163 (a district court "must be allowed substantial latitude in refusing waivers of conflicts of interest").  Here, disqualification of Mr. Aronica and his firm from representing both defendants is not warranted.  The potential conflicts of greatest concern may be avoided by separate representation and a different result would impose undue hardship on these defendants by requiring them both at a late stage in the proceedings to obtain new counsel who would have no familiarity with the case.  The incremental benefit from requiring both defendants to retain new counsel is so small and the cost to defendants so great that it does not warrant disqualification of Mr. Aronica and his firm from representing both defendants.  Moreover, the Court will conduct a further Rule 44 *voir dire* to ensure that each of the defendants wishes to waive any conflict that remains.

Accordingly, for the reasons stated,

It is **ORDERED** that the government's motion to disqualify Joseph J. Aronica and the law firm of Duane Morris LLP from representing both defendants Naran S. Ivanchukov and Michelle I. Pappadakis, or either of them, is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** insofar as Mr. Aronica and the law firm of Duane Morris LLP are **DISQUALIFIED** from representing defendant Pappadakis, but it is **DENIED** insofar as they may continue in their representation of defendant Ivanchukov.  Additionally, a further hearing will be scheduled in this matter to determine whether each defendant wishes to waive any conflict of interest that might remain from the ongoing representation of defendant Ivanchukov by Mr. Aronica and his firm, as required by Rule 44, Fed. R. Civ. P.

It is further **ORDERED** that defendants' motion for limited appointment of counsel is **DENIED**.

-11-

The Clerk is **DIRECTED** to appoint counsel for defendant Michelle I. Pappadakis and to send a copy of this Order to all counsel of record.

_____/s/_____

Alexandria, Virginia                                         T. S. Ellis, III
May 18, 2005                                                 United States District Judge